STEVEN G. ZIEFF (SBN: 84222)
JOHN T. MULLAN (SBN: 221149)
MICHELLE G. LEE (SBN: 266167)
RUDY, EXELROD, ZIEFF & LOWE, LLP
351 California Street, Suite 700
San Francisco, CA  94104
Telephone: (415) 434-9800
Facsimile:  (415) 434-0513
sgz@rezlaw.com
jtm@rezlaw.com
mgl@rezlaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERI CONNOLLY and RHONDA ARNESON, individually and on behalf of all others similarly situated,<br><br>             Plaintiffs,<br><br>    vs.<br><br>WEIGHT WATCHERS NORTH AMERICA, INC.,<br><br>           Defendant.<br>_____/ | Case No. 3:14-cv-01983-TEH<br><br>CLASS ACTION<br><br>**PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR ORDER CERTIFYING SETTLEMENT CLASS AND PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT**<br><br>Date:      July 28, 2014<br>Time:     10:00 a.m.<br>Place:    Hon. Thelton E. Henderson<br>             (Courtroom 2, 17th Floor) |

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

**NOTICE OF MOTION AND MOTION**

TO DEFENDANT WEIGHT WATCHERS NORTH AMERICA, INC. AND ITS COUNSEL OF RECORD AND ALL OTHER INTERESTED PARTIES:

PLEASE TAKE NOTICE THAT on July 28, 2014 at 10:00 a.m., in Courtroom 2 of this Court located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs Jeri Connolly and Rhonda Arneson ("Plaintiffs," "Representative Plaintiffs") will move and hereby moves the Court for an order granting the following relief:

(1) Certifying the proposed settlement class defined as "all persons who worked for Weight Watchers North America, Inc. as "Leaders" and "Receptionists," including those who performed "Location Coordinator" work (pay codes 40 and 41) in California at any time during the period from January 9, 2011, to December 9, 2012, according to Weight Watchers' payroll records ("Class," "Class Members")[1] for purposes of settling all claims pleaded in the Litigation on the terms set forth in the Parties' Joint Stipulation and Settlement and Release filed herewith, pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure;

(2) Certifying Plaintiffs as the class representatives pursuant to Fed. R. Civ. P. 23 and appointing Plaintiffs' attorneys as Class Counsel pursuant to Fed. R. Civ. P. 23(g);

(3) Preliminarily approving the Parties' proposed class action settlement as fair, reasonable, and adequate, pursuant to Rule 23(e);

(4) Preliminarily granting the Representative Plaintiffs' applications for awards of service payments pursuant to applicable legal authorities permitting courts to make such awards where they are fair and reasonable;

(5) Setting a final Fairness Hearing for December 15, 2014, or the earliest available date thereafter, pursuant to Fed. R. Civ. P. 23(e) to finally determine whether the proposed settlement should be approved as a fair, reasonable, and adequate settlement of the claims encompassed by the settlement and to determine whether to grant Class Counsel's motion for attorney's fees and costs;

---

[1] All capitalized terms appearing in this Motion that are not defined herein have the meanings assigned to them in the Joint Stipulation of Settlement and Release.

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

(6)     Directing notice of the settlement class action, the proposed settlement, and the Fairness Hearing to Class Members pursuant to Fed. R. Civ. P. 23(c)(2)(B) and 23(e)(1);

(7)     Directing the implementation of the plan for directing notice to the Class Members on the terms set forth in the Settlement, and setting forth the dates or deadlines for opting out and objecting and for the Parties and the Settlement Administrator to perform the required acts relating to the notice process as provided in the Settlement; and,

(8)     Making findings of fact and stating conclusions of law in support of the foregoing.

This Motion is based on the Parties' Joint Stipulation of Settlement and Release, the Memorandum of Points and Authorities, the declaration of Steven G. Zieff, the proposed order filed herewith, the other records and pleadings filed in this action, and upon such other documentary and oral evidence or argument as may be presented to the Court at the hearing of this Motion.

DATED:  June 11, 2014                          Respectfully submitted,

                                                RUDY, EXELROD, ZIEFF & LOWE, LLP


                                                By:   _/s/ Steven G. Zieff_____
                                                      STEVEN G. ZIEFF
                                                      Attorneys for Plaintiffs

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR ORDER CERTIFYING
SETTLEMENT CLASS AND PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT
CASE NO. CV 14-01983 TEH

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR ORDER CERTIFYING SETTLEMENT CLASS
AND PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................1

II.   CLASS CLAIMS AND PROCEDURAL BACKGROUND ...................................3

III.  KEY TERMS OF THE PROPOSED SETTLEMENT .........................................7

IV.   DISCUSSION ....................................................................................................9

      A.    Procedure for approving a class action settlement. ...............................9

      B.    The Court should certify a settlement class..........................................10

            1.    The numerosity requirement is satisfied. .....................................11

            2.    There are common questions of law and fact.................................11

            3.    The Representative Plaintiffs' claims are typical of the
                  Class's claims. .......................................................................12

            4.    The Representative Plaintiffs will fairly and adequately
                  represent the Class's interests...................................................12

            5.    Common questions of law and fact predominate and a class
                  action is a superior method of adjudication.................................12

      C.    Plaintiffs' counsel are qualified to be Class Counsel. ............................13

      D.    The Court should preliminarily approve the Settlement. .......................13

            1.    Legal standard. .......................................................................13

            2.    The proposed settlement is the product of informed
                  negotiations. ..........................................................................14

            3.    The proposed settlement is the product of non-collusive,
                  arms-length negotiations. .........................................................15

            4.    The proposed settlement has no obvious deficiency and
                  does not improperly grant preferential treatment to the class
                  representatives or segments of the class.....................................15

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

a.      Amount of settlement payment. ......................................................16

b.      Plan of Distribution. .......................................................................18

c.      Claims being released. .....................................................................20

E.      The class representative service payments requested for the Representative
Plaintiffs are fair and reasonable. ............................................................21

F.      The Court should set a fairness hearing. ...........................................................22

Plaintiffs request that the Court set the Fairness Hearing for December 15, 2014,
or the earliest available date thereafter. ...................................................22

G.      The Court should direct notice to the Class of the proposed settlement and
the final fairness hearing. ........................................................................22

V.    CONCLUSION ..............................................................................................24

RUDY EXELROD ZIEFF & LOWE LLP

351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER CERTIFYING
SETTLEMENT CLASS AND PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT
CASE NO. CV 09-4926 TEH

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) .................................................................................................12

*Chun-Hoon v. McKee Foods Corp.,*
   2009 WL 3349549 (N.D. Cal. Oct. 15, 2009) ..............................................10, 14

*Churchill Village, L.L.C. v. General Elec.,*
   361 F.3d 566 (9th Cir. 2004).....................................................................................22

*Dennis v. Kellogg Co.,*
   2010 WL 4285011 (S.D. Cal. Oct. 14, 2010) ...........................................................14

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998).................................................................................10

*Horton v. USAA Cas. Ins. Co.,*
   266 F.R.D. 360 (D. Ariz. 2009).................................................................................14

*Ingram v. The Coca-Cola Co.,*
   200 F.R.D. 685 (N.D. Ga. 2001) .............................................................................21

*Misra v. Decision One Mortgage Co.,*
   2009 WL 4581276 (C.D. Cal. Apr. 13, 2009) ........................................................23

*Murphy v. Kenneth Cole Prods., Inc.,*
   40 Cal.4th 1094 (2007)...............................................................................................8

*Officers for Justice v. Civil Serv. Comm'n of*
   *the City and County of San Francisco,*
   688 F.2d 615 (9th Cir. 1982) ....................................................................................14

*In re Omnivision Tech., Inc.,*
   559 F.Supp.2d 1036 (N.D. Cal. 2008).......................................................................18

*In re Wireless Facilities, Inc. Sec. Litig.,*
   253 F.R.D. 630 (S.D. Cal. 2008) ......................................................................10, 22

*Wright v. Linkus Enter., Inc.,*
   259 F.R.D. 468 (E.D. Cal. 2009)...............................................................................23

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

iii

RUDY EXELROD ZIEFF & LOWE LLP

351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

1

**Statutes, Rules and Regulations**

2

California's Unfair Competition Law
    Business and Professions Code

3

        Sections 17200-17208 ...................................................................*passim*

4

California Labor Code

5

        Section 201 ..............................................................................4
        Section 203 ..............................................................................4

6

        Section 204 ..............................................................................4
        Section 218.5 ...........................................................................4

7

        Section 218.6 ........................................................................3, 4
        Section 226 .................................................................4, 8, 11, 15

8

        Section 226(a) ...................................................................*passim*

9

        Section 226(e) .............................................................1, 19, 20
        Section 510 .......................................................................4, 11

10

        Section 558 ..............................................................................4

11

        Section 1174 .........................................................................11
        Section 1194 ........................................................................3, 4

12

        Section 1194.2 .........................................................................3
        Section 1194.1 .......................................................................12

13

        Section 1197 ............................................................................3
        Section 2802 .......................................................................4, 11

14

        Section 2699 ......................................................................*passim*

15

Federal Rules of Civil Procedure

16

        Rule 23(a) .......................................................................10, 11
        Rule 23(b) ..............................................................................10

17

        Rule 23(b)(3) ....................................................................*passim*
        Rule 23(c)(2)(B) .................................................................22, 23

18

        Rule 23(e) ................................................................................9

19

        Rule 23(e)(1) .....................................................................9, 22
        Rule 23(e)(2) ................................................................9, 13, 22

20

        Rule 23(g) ..............................................................................13
        Rule 23(g)(1)(A) .....................................................................13

21

        Rule 23(g)(1(B) .......................................................................13
        Rule 26(a) ................................................................................6

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER CERTIFYING
SETTLEMENT CLASS AND PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT
CASE NO. CV 09-4926 TEH

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.      INTRODUCTION**

Plaintiffs Jeri Connolly and Rhonda Arneson ("Plaintiffs," "Representative Plaintiffs") have filed their Motion for Order Certifying Settlement Class and Preliminarily Approving Class Action Settlement ("Motion").  The Motion seeks an order from the Court:  (1) certifying a settlement class for purposes of settling the above-captioned putative class action; (2) preliminarily approving the proposed settlement of this class action on the terms set forth in the Parties' Joint Stipulation of Settlement and Release (Declaration of Steven G. Zieff, Exh. 1); (3) preliminarily approving the requested service payments to the Representative Plaintiffs; (4) setting a final fairness hearing; and, (5) directing notice to Class Members[1] of the proposed settlement and Fairness Hearing.

The Class is comprised of 3,319 individuals who worked for Weight Watchers North America, Inc. ("Weight Watchers," Defendant") in California as "Leaders" or "Receptionists" at any time during the period from January 9, 2011, to December 9, 2012, according to Weight Watchers' payroll records (Zieff Decl., ¶ 43).  Plaintiffs allege that Weight Watchers is liable to Class Members for multiple violations of the California Labor Code, the applicable California Industrial Welfare Commission Wage Order ("IWC Order"), and California's Unfair Competition Law (*id*. at ¶ 35).  Plaintiffs seek to recover unpaid minimum wages, unpaid overtimes wages, and penalties, among other relief (Compl., Dkt. No. 1 at ¶ 2).  Plaintiffs also claim that Weight Watchers is liable for penalties under Labor Code Section 226(e) because it failed to issue itemized wage statements that complied with Section 226(a) (*ibid*.).

As set forth more fully below, under the terms of the proposed settlement, Weight Watchers will make a $1,687,500 non-reversionary payment in full settlement of all the claims in the litigation, including all claims for attorney's fees and costs (Zieff Decl., ¶ 44).  After deductions are made from the Settlement Fund for payment of reasonable attorney's fees and

---

[1]  All capitalized terms appearing in this memorandum that are not defined herein have the meanings assigned to them in the Joint Stipulation of Settlement and Release.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER
CERTIFYING SETTLEMENT CLASS AND PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT
CASE NO. CV 14-01983 TEH

RUDY EXELROD ZIEFF & LOWE LLP

351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

1  costs reimbursement to Class Counsel, subject to Court approval, service payments to the

2  Representative Plaintiffs, subject to Court approval, and a payment to the California Labor and

3  Workforce Development Agency as required under California law, the estimated amount of the

4  Net Settlement Fund that will be available for distribution to Class Members is $1,220,625 (*id.* at

5  ¶ 48).  A reasonable projection of the average per-Class Member recovery is approximately $365

6  (*id*. at ¶ 51).

7        This is a fair, reasonable, and non-collusive settlement.  The settlement was the product of

8  vigorous, arms-length negotiation after Class Counsel engaged in substantial investigation and

9  received relevant records from Defendant.  As discussed in more detail below, the instant case is

10  a follow-on action to *Sabatino v. Weight Watchers North America, Inc.*, Case No. CV 09-4926-

11  TEH (N.D. Cal. 2009), and asserts claims nearly identical to those asserted in *Sabatino* by a

12  similarly-situated class of individuals.  In *Sabatino*, as in the instant litigation, plaintiffs are

13  "Leaders" or "Receptionists" who performed work for Weight Watchers related to customer

14  meetings.  The *Sabatino* plaintiffs sued Weight Watchers seeking back pay and liquidated

15  damages for unpaid minimum wages, including split shift wages, back pay for unpaid overtime

16  wages, "waiting time" penalties for wages due but not timely paid upon separation from

17  employment, payment for unreimbursed business expenses, damages and/or penalties for failure

18  to provide complete and accurate itemized wage statements, restitution and disgorgement for

19  unfair business practices (including the failure to pay minimum and overtime wages and the

20  failure to indemnify for business expenditures), and Private Attorneys General Act penalties.

21        The *Sabatino* case was resolved pursuant to court-approved settlement on May 23, 2011.

22  That settlement covered wage and hour claims arising during the time period from September 17,

23  2005, to January 8, 2011.  The instant action challenges the same allegedly unlawful pay

24  practices on behalf of a similarly-situated class of individuals for the period immediately

25  following the end of the class period in *Sabatino* until December 9, 2012, when Weight Watchers

26  apparently stopped the pay practices that are the subject of both this and the *Sabatino* litigation.

27  The two cases differ only in the time periods at issue – not in the gravamen of their complaints.

28  ///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER
CERTIFYING SETTLEMENT CLASS AND PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT
CASE NO. CV 14-01983 TEH

Accordingly, Class Counsel is well-prepared and experienced in evaluating the risks and potential value of the claims at issue in this litigation.  Class Counsel's work in this case expanded and relied upon the research, analysis, and discovery gathered pursuant to the *Sabatino* litigation.  In essence, the instant litigation is a follow-on case to *Sabatino* to ensure that Plaintiffs and the Class receive compensation for their work during all periods the challenged policies were in effect.  Weight Watchers has represented, and counsel's investigation has confirmed, that until December 9, 2012, Defendant maintained the same policies that were challenged in the *Sabatino* litigation (*id*. at ¶ 36).

The proposed settlement in this case closely tracks the terms of the settlement in the *Sabatino* case.  The estimated approximate recovery rates per pay period in this action are very comparable to – and in some cases slightly higher than – those approved in the *Sabatino* settlement (*id*. at ¶ 51).  Moreover, the average gross (pre-tax) payment to Class Members from the Net Settlement Fund is projected to be in the range of approximately $365.  When adjusted for the shorter class period in this case, this average gross recovery amount is very comparable to the average gross recovery amount received in the previously-approved *Sabatino* case; for class members who worked as Leaders, the average gross recovery is slightly more than that in *Sabatino* (*ibid*.).

This case meets all the requirements for certification of a settlement class, preliminary approval of the proposed class action settlement, distribution of notice of the proposed settlement to Class Members, and the setting of a final fairness hearing to decide whether to finally approve the settlement as being fair, reasonable, and adequate.  Accordingly, Plaintiffs respectfully submit that the Court should enter an order so finding, and order all further relief requested by the Motion as reflected in the proposed order submitted herewith.

## II.   CLASS CLAIMS AND PROCEDURAL BACKGROUND

On April 29, 2014, Plaintiffs filed the complaint in this litigation as a putative class action and representative action on behalf of individuals employed by Defendant in California as Weight Watchers meeting "Leaders," "Location Coordinators," and "Receptionists."  The First Cause of Action stated claims under Labor Code Sections 218.6, 1194, 1194.2, and 1197, and the

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

applicable California Industrial Welfare Commission Wage Order ("IWC Order") for failure to pay the minimum wage for all hours worked, alleging that class members were paid for a set number of hours for each Weight Watchers member "meeting" they worked as a "Leader" or "Receptionist," or for each week or other time period that they performed "Location Coordinator" work, and that class members worked additional hours – and "split shift" schedules – for which they were not paid at least the minimum wage.  The Second Cause of Action stated claims under Labor Code Sections 218.6, 510, and 1194 and the IWC Order for failure to pay overtime wages for overtime hours worked.  The Third Cause of Action stated a claim under Labor Code Sections 201-203, 218.5, and 218.6 for willful failure to pay wages due but unpaid to class members who separated from employment at the time of their separation.  The Fourth Cause of Action stated a claim under Labor Code Section 2802 for failure to reimburse class members for business expenses including the use of class members' personal vehicles in the course of their employment.  The Fifth Cause of Action stated a claim under Labor Code Section 226 for failure to furnish class members with itemized wage statements containing all the information required under Section 226(a), including the total number of hours worked, the applicable pay rates, and the amounts of wages earned under the different applicable pay rates. The Sixth Cause of Action stated a claim for violations of California's Unfair Competition Law, Sections 17200-17208 of the California Business and Professions Code, arising from the failure to pay wages and expense reimbursements.  The Seventh Cause of Action stated claims under the California Labor Code Private Attorneys General Act ("PAGA"), Labor Code Section 2699, *et seq*., seeking to recover penalties for Weight Watchers' alleged violations of underlying Labor Code provisions, including violations of or arising under Labor Code Sections 201-204, 226, 510, 558, 1174, and 2802.  The Complaint sought the recovery of unpaid wages, liquidated damages, penalties, Section 17200 restitution, interest, and reasonable attorney's fees and costs.

On May 7, 2014, Plaintiffs filed an unopposed motion to relate the instant case to *Sabatino*, which was granted on May 13 (Dkt. No. 65).  As stated in the motion, the *Sabatino* case was an employment class action brought by several Weight Watchers employees.  As in the instant action, the *Sabatino* plaintiffs were "Leaders" and "Receptionists" who were employed by

4

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

1   Defendant to perform work related to Weight Watchers customer meetings.  The Second

2   Amended Complaint in the *Sabatino* case alleged, among other things, that, for the time period

3   from September 17, 2005 to January 8, 2011, Weight Watchers failed to pay its "Leader" and

4   "Receptionist" employees (1) at least the minimum wage and contract wage for all hours worked,

5   (2) premium overtime wages for all overtime hours worked, (3) the required minimum wage for

6   working "split shifts," and (4) at least the minimum wage and/or the contract wage for all hours

7   spent performing "Location Coordinator" work.  Additionally, the complaint alleged that Weight

8   Watchers failed to reimburse Leaders and Receptionists for all expenses incurred in the course of

9   their employment, failed to provide them with itemized pay statements as required under Labor

10  Code Section 226(a), failed to keep required payroll and work records, willfully failed to pay all

11  wages due but unpaid at the time of separation from employment, and engaged in "unfair

12  competition" under Section 17200 by failing to pay required wages and expense reimbursements.

13      As described in the motion to relate and in the parties' joint stipulation of settlement, filed

14  herewith as Exhibit 1 to the Declaration of Steve Zieff, the claims asserted in both actions are

15  virtually identical (Zieff Decl., ¶ 36).  The parties in the *Sabatino* litigation eventually settled the

16  case after participating in mediation, and following extensive discovery and due diligence.

17  Following the final fairness hearing (at which no objections were received), this Court approved

18  the *Sabatino* settlement on May 23, 2011.  The terms of the court-approved settlement were

19  carried out and the case was closed.

20      The instant litigation arose after plaintiff's counsel in the *Sabatino* action were

21  approached by Jeri Connolly, a class member in the *Sabatino* case.  Ms. Connolly informed

22  counsel that the Weight Watchers practices at issue in the *Sabatino* lawsuit persisted through

23  December 2012 (*id*. at ¶¶ 40, 72).  Counsel initiated an investigation, which included

24  interviewing Ms. Connolly and contacting other Weight Watchers employees to verify and

25  corroborate the allegations.  In order to facilitate a thorough pre-filing investigation, the parties

26  entered into a tolling agreement, effective November 5, 2013, which stopped the statute of

27  limitations from running on the claims of Plaintiffs and the putative Class (*id*. at ¶ 37).  Counsel

28  also sent a letter to the LWDA notifying the agency of the allegations (*id*. at ¶ 58).  Following

1   their investigation, counsel filed the instant lawsuit on behalf of Plaintiffs and those similarly

2   situated to cover the time period from January 9, 2011 (immediately following the conclusion of

3   the class period in *Sabatino*), through December 9, 2012.

4          Prior to and after the complaint was filed in the instant case, the parties participated in

5   extensive settlement negotiations (*id*. at ¶¶ 38-42).  The negotiations were conducted after the

6   parties had exchanged information, including information relating to the pay practices challenged

7   here and any changes thereto and payroll data maintained by Defendant for Leaders and

8   Receptionists who worked for Defendant in California during the period from January 9, 2011,

9   through December 9, 2012.  Class Counsel also reviewed many documents from the *Sabatino*

10  case.[2]  Class Counsel worked extensively with their retained expert, Dave Breshears, in

11  reviewing and analyzing the payroll and work week data provided by Defendant (*id*. at ¶¶ 39, 41,

12  60).  Based on the analysis of this data and comparison to the data obtained and analyzed in the

13  *Sabatino* litigation, Class Counsel negotiated a settlement that provides Class Members with a

14  comparable or, in some cases, better recovery in this case (*id*. at ¶¶ 51, 59, 60).  Defendant

15  represented, and Class Counsel's investigation confirmed, that on December 9, 2012, Defendant

16  changed the pay practices challenged by Plaintiffs in this case and by the *Sabatino* plaintiffs (*id*.

17  at ¶¶ 36, 40, and Exh. 2, ¶ 3).

18         The parties negotiated and executed a Joint Stipulation of Settlement and Release ("Joint

19  Stipulation," "Settlement"), filed herewith as Exhibit 1 to the Zieff Declaration.  The Joint

20  Stipulation provides for the full settlement and release of those class and representative claims

21  encompassed by the Complaint and otherwise sets forth the terms of the proposed settlement

22  which is before the Court for preliminary approval.

23  ///

---

24         [2]  The discovery obtained and reviewed in the *Sabatino* litigation included:  disclosures

25  under Federal Rule of Civil Procedure 26(a); written discovery, including extensive document
    and payroll data discovery; a two-day deposition of Weight Watchers' "person[s] most

26  knowledgeable;" the deposition of one of Plaintiff Sabatino's former managers at Weight
    Watchers; and full-day depositions of the three *Sabatino* plaintiffs. In *Sabatino* Class Counsel

27  engaged in further investigation of the claims and defenses in the litigation, including
    interviewing numerous putative class members (Zieff Decl., Exh. 4, ¶ 39).

28

RUDY EXELROD ZIEFF & LOWE LLP

351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER
CERTIFYING SETTLEMENT CLASS AND PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT
CASE NO. CV 14-01983 TEH

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

## III.   <u>KEY TERMS OF THE PROPOSED SETTLEMENT</u>

<u>**$1,687,500 Non-reversionary Settlement Fund**</u>. The Settlement provides for Weight Watchers to make a non-reversionary settlement payment to the Class of $1,687,500 in settlement of all claims in the Litigation, including all claims for attorney's fees and costs. Class Members will not be required to submit claims or take any other affirmative action to receive their shares of the settlement proceeds. In addition to the $1,687,500 Settlement Fund, Weight Watchers will also pay the employer's share of state and federal payroll taxes (*e.g.*, FICA, FUTA) on all amounts that are paid to Class Members for unpaid wages. Weight Watchers will also pay the costs and fees of the company, Rust Consulting, that will serve as the Settlement Administrator. Rust will distribute notice to the class, calculate Class Members' settlement shares, and perform additional functions related to the implementation of the settlement terms (*id.* at ¶ 44).

<u>**Attorney's Fees and Costs**</u>. Under the terms of the Settlement, Class Counsel will apply to the Court for an award of reasonable attorney's fees in an amount up to 25% of the Settlement Fund, or $421,875, plus reimbursement of Class Counsel's costs of up to $15,000, which application will not be opposed by Weight Watchers. Fees and costs awarded by the Court will be paid to Class Counsel from the Settlement Fund, and deducted from the amount of the Settlement Fund otherwise available to be distributed to Class Members (*id.* at ¶ 45).

<u>**Service Payments to the Representative Plaintiffs**</u>. Under the terms of the Settlement, the parties agreed that the Representative Plaintiffs could apply to the Court for awards of up to $15,000 each – for a total of $30,000 – as service payments in recognition of their services on behalf of the class, which application will not be opposed by Weight Watchers. Service payments awarded by the Court will be paid to the Representative Plaintiffs from the Settlement Fund, and deducted from the amount of the Settlement Fund otherwise available to be distributed to Class Members (*id.* at ¶ 46). Class Counsel and the named Plaintiffs have decided to seek $12,500 for Plaintiff Connolly and $10,000 for Plaintiff Arneson in service payments, less than the amount allowed under the terms of the settlement agreement. Class Counsel seeks somewhat more for Plaintiff Connolly's service payment as she has spent more time on the matter and is

RUDY EXELROD ZIEFF & LOWE LLP

351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

still employed by Weight Watchers (*see*, *id*. at ¶ 72).

**Payment to the California Labor and Workforce Development Agency ("LWDA")**. The Settlement allocates $10,000 of the Settlement Fund as PAGA penalties sought as part of the proposed settlement (*id*. at ¶ 47).  Pursuant to Labor Code Section 2699(i), 75% of these penalties are to be distributed to the LWDA.  Accordingly, the Settlement provides for a $7,500 to be made to the LWDA from the Settlement Fund.  This amount will be deducted from the amount of the Settlement Fund otherwise available to be distributed to Class Members (*ibid*.).[3]

**Distribution of the Net Settlement Fund to Class Members.**  Under the Settlement, the portion of the Settlement Fund remaining after the above-described payments have been made to Class Counsel, the Representative Plaintiffs, and the LWDA – the Net Settlement Fund, presently projected to be $1,220,625 – will be distributed among all Class Members who do not timely exclude themselves from the settlement class ("opt out").  Class Members do not need to take any action to receive their settlement shares.  Funds for checks that are not cashed by Class Members after 120 days will be paid to a court-approved charity as *cy pres* beneficiary.  Pursuant to the Settlement, for tax purposes, 30% of the amount distributed to each participating Class Member is allocated to wages, and 70% is allocated to penalties and interest.  For amounts allocated to wages, income taxes and the employee's share of payroll taxes will be withheld from Class Member's settlement share payments; as noted, Weight Watchers is responsible for paying the

---

[3]  The time period for which Labor Code penalties arguably attach is quite short in this litigation due to the one-year statute of limitations.  *See, e.g., Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal.4th 1094, 1102 (2007) ("a one-year statute of limitations governs claims for penalties") (citing Cal. Code Civ. Proc., § 340(a)).  The challenged pay practices apparently finally stopped on December 9, 2012 (Zieff Decl., ¶ 36).  While Plaintiffs sent their letter notifying the LWDA of the alleged PAGA violations on October 18, 2013, the parties were not able to finalize a tolling agreement concerning the claims in this case until November 5, 2013. The tolling agreement of November 2013 tolled the applicable statutes of limitations under the California Labor Code on November 5, 2014 (*id*. at ¶ 58).  Since the challenged pay practices changed effective December 9, 2012, there were only about six weeks within the one-year period for Labor Code Section 226 penalties.  Thus, there were many fewer weeks with the relatively stronger Labor Code penalties than in the *Sabatino* case.  In that case, the lawsuit was originally filed on September 17, 2009, such that the period for enhanced damages ran from September 2008 through December 8, 2011 (the last date of the class period in the *Sabatino* case).  In the instant matter, in contrast, there are far fewer work weeks both in absolute and relative terms for which penalties or enhanced damages are available.

employer's ordinary share of payroll taxes on payments that are for wages (*id*. at ¶ 44).

**Plan of Distribution for Distributing the Net Settlement Fund Among Participating Class Members**.  The Settlement sets forth a Plan of Distribution ("Plan") for distributing the Net Settlement Fund among participating Class Members on a modified pro rata basis, described more fully below, that allocates 75% of the Net Settlement Fund ("Leader Fund") to pay periods in which participating Class Members worked as meeting Leaders and the remaining 25% of the Net Settlement Fund ("Non-Leader Fund") to pay periods in which participating Class Members worked as Receptionists and/or as employees performing hourly-paid Location Coordinator Work.  Within the Leader Fund and Non-Leader Fund distributions, the Plan provides for participating Class Members to recover at a higher rate for pay periods when they worked at meetings as Leaders or Receptionists that fall with the statute of limitations period for the recovery of "penalties" for violations of California's itemized pay statement law, Labor Code Section 226(a) (*id*. at ¶ 49).

**Release of Claims**.  Under the terms of the Settlement, all Class Members who do not opt out will, by operation of the entry of the Judgment and Final Approval contemplated by the Settlement, release Weight Watchers from all claims alleged in the Complaint, and from any and all other claims that could have been brought based on the facts alleged in the Complaint (*id*. at ¶ 50).  The scope of the release is the same as that approved by the Court in the *Sabatino* settlement.

## IV.   DISCUSSION

### A.   Procedure for approving a class action settlement.

The claims of a certified class may be settled only with the court's approval.  Fed. R. Civ. P. 23(e).  In order to approve a settlement that would bind class members, the court must find after a hearing that the proposed settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Before making such a finding, the court must direct notice to all class members who would be bound, with all class members having the right to object to the proposed settlement. Fed. R. Civ. P. 23(e)(1),(2).

///

RUDY EXELROD ZIEFF & LOWE LLP

351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

The procedure for deciding whether to approve a proposed class action settlement is generally a two-step process involving a preliminary approval stage and a final fairness hearing. At the preliminary approval stage, if the case has not already been certified as a class action, "[t]he judge should make a preliminary determination that the proposed class satisfie[s] the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." Federal Judicial Center, Manual for Complex Litigation § 21.632, p. 473 (4th ed. 2008); *see In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 634 (S.D. Cal. 2008).

Under Federal Rule of Civil Procedure 23(a), a class action is only permissible where the class is so numerous that joinder of all members is impracticable, there are questions of law or fact common to the class, the claims of the representative parties are typical of the claims of the class, and the representative parties will fairly and adequately protect the class's interests. For purposes of settlement, Plaintiffs are seeking certification under Rule 23(b)(3). Under that Rule, provided that Rule 23(a) is satisfied, a class action may be maintained if the court finds that questions of law or fact common to the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

The court must then determine that the settlement appears to be one that would be capable of being approved after the final fairness hearing – i.e., that there are no factors appearing that would make the settlement other than fair, reasonable, and adequate. *See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Chun-Hoon v. McKee Foods Corp.*, 2009 WL 3349549, *2 (N.D. Cal. Oct. 15, 2009) (Walker, J.). Assuming the court makes both of these determinations, "[t]he court then approves the form and manner of notice [to the class] and sets a final fairness hearing, where it will make a final determination on the fairness of the class settlement." *In re Wireless Facilities*, 253 F.R.D. at 634.

**B.      The Court should certify a settlement class.**

The settlement class to be certified is defined as follows: "all persons who worked for Weight Watchers North America, Inc. in California as 'Leaders' or 'Receptionists' including those who performed hourly-paid Location Coordinator work (pay codes 40 and 41) at any time

10

during the period from January 9, 2011 to December 9, 2012, according to Weight Watchers' payroll records." This case meets all the requirements for maintaining a class action for purposes of settling all claims pleaded in the Complaint. As discussed below, this case satisfies the requirements for class certification under FRCP 23(a) and 23(b)(3).

**1. The numerosity requirement is satisfied.**

The numerosity requirement is satisfied because there are over 3,300 Class Members. Class Members' identities can be determined from Weight Watchers' records (Zieff Decl., ¶ 43).

**2. There are common questions of law and fact.**

There are questions of law or fact common to the Class, including but not limited to: whether Defendant has violated Labor Code § 1197 and the applicable IWC Order and applicable Labor Code provisions by failing to pay Leaders and Receptionists the required minimum wage and contract wage for all hours worked, including an hour's pay at the minimum wage rate for working split shifts; whether Defendant has violated Labor Code § 510 by failing to pay overtime compensation to Leaders and Receptionists when they worked overtime; whether Defendant has violated Labor Code § 226 by failing to provide Leaders and Receptionists with itemized wage statements showing, among other things, all their daily and weekly hours worked, all applicable rates and formulae of pay, and an itemization of their pay under the different applicable rates and formulae; whether Defendant has violated Labor Code § 2802 by failing to reimburse Leaders and Receptionists for their business expenditures; whether Defendant has willfully failed to pay due but unpaid minimum wages and overtime wages to Leaders and Receptionists upon their separation from employment (or within 72 hours of their separation, if they quit without giving 72 hours' notice); whether Defendant has violated Business and Professions Code § 17200 by failing to pay Leaders and Receptionists minimum wages and overtime wages, and by failing to indemnify Leaders and Receptionists for their business expenditures; whether Defendant has failed to keep complete and accurate records of Leaders' and Receptionists' hours of work as required by California Labor Code § 1174 and the IWC Order; whether Defendant's acts and omissions giving rise to the action for failure to pay minimum wages have been in good faith, and whether Defendant has had reasonable grounds for believing its acts and omissions were not

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

violations of the Labor Code, for purposes of determining Leaders' and Receptionists'
entitlement to liquidated damages under Labor Code § 1194.1; and the proper measure of
damages for Defendant's alleged violations.  These are the same common questions that
supported the class certification and the settlement in the *Sabatino* matter.

3.      **The Representative Plaintiffs' claims are typical of the Class's claims.**

The Representative Plaintiffs' claims are typical of the Class's claims, in that their claims
arise from the same alleged events and course of conduct as the Class's claims and are based on
the same legal theories.  As employees of Weight Watchers who worked as "Leaders" or
"Receptionists", or performed hourly work as "Location Coordinators", Plaintiffs' claims for
unpaid wages, business expenses, and penalties are the same as those of all other class members.

4.      **The Representative Plaintiffs will fairly and adequately represent the
Class's interests.**

The Representative Plaintiffs will fairly and adequately represent the Class's interests.
The Representative Plaintiffs have the same interests as all members of the Class.  They have
diligently prosecuted this action to date including, but not limited to, providing Class Counsel
with information to help them prepare the case, responding to Class Counsel's request for
additional information, and being interviewed by Class Counsel regarding the claims at issue in
this case (*id*. at ¶ 72).  They are represented by experienced and competent attorneys who have
the resources necessary to represent the Class (*id*. at ¶¶ 5-34, 73-74).

5.      **Common questions of law and fact predominate and a class action is a
superior method of adjudication.**

The requirements of Federal Rule of Civil Procedure 23(b)(3) are satisfied because
questions of law and fact common to Class Members predominate over any questions affecting
only individual members and a settlement class is superior to other available methods for the fair
and efficient adjudication of the controversy.  On account of the Settlement, the Court need not
consider any trial manageability issues that might otherwise bear on the propriety of class
certification.  *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)

///

///

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

**C.      Plaintiffs' counsel are qualified to be Class Counsel.**

A court that certifies a class must appoint class counsel. Fed. R. Civ. P. 23(g).  In appointing class counsel, the court must consider the following: (1) the work counsel has done in investigating potential claims; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).  The court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the class's interests. Fed. R. Civ. P. 23(g)(1(B).

Plaintiffs' counsel are the law firm of Rudy, Exelrod, Zieff & Lowe, LLP ("REZL").  Steven G. Zieff and John T. Mullan have extensive experience handling class actions and the types of claims asserted in this action, including the related *Sabatino* class action (Zieff Decl. ¶¶ 5-34).  Plaintiffs' counsel have performed extensive work to date in identifying and investigating the potential claims in this action.  Counsel have committed and will continue to commit adequate resources to representing the class (*id.* at ¶¶ 71-72).

For the foregoing reasons, the Court should, for settlement purposes, certify the case as a class action on behalf of the proposed settlement class, certify Plaintiffs as the class representatives, appoint Plaintiffs' counsel (hereinafter, "Class Counsel") as class counsel, and appoint Steven G. Zieff as Lead Class Counsel.

**D.      The Court should preliminarily approve the Settlement.**

**1.      Legal standard.**

The Court may approve a settlement that will bind absent class members where there is a finding that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).

> The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

///

*Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

The court does not finally determine whether the proposed settlement is fair, reasonable, and adequate at the preliminary approval stage.  At the preliminary stage, "[t]he Court should consider whether the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiency, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 363 (D. Ariz. 2009) (internal quotes and citations omitted); *Dennis v. Kellogg Co.*, 2010 WL 4285011, *4 (S.D. Cal. Oct. 14, 2010); *Chun-Hoon*, 2009 WL 3349549 at *2.

### 2.     The proposed settlement is the product of informed negotiations.

The proposed settlement is the product of informed negotiations.  Prior to negotiating and reaching final agreement on the proposed settlement in this case, Class Counsel performed significant work to investigate, research, and analyze the claims, defenses, legal and factual issues, and potential recovery in this case, including pre- and post-filing investigation and legal research and analysis (Zieff Decl., ¶¶ 37-43).  Class Counsel conducted significant informal discovery and investigation, which included interviewing the named plaintiffs and other current and former employees of Weight Watchers in California, reviewing and analyzing work and payroll data for the Class produced by Weight Watchers in the course of informal discovery conducted during the course of settlement negotiations, and estimating potential Class recoveries on a per week or pay period basis based thereon (*id.* at ¶¶ 39-41).  Moreover, Class Counsel's extensive discovery and investigation in the related *Sabatino* case provided additional, substantial information upon which they were able to assess the strengths and risks of the case.  Class Counsel worked closely with a forensic accountant to evaluate Defendant's potential exposure for damages, penalties, and restitution, which required analyzing and utilizing the extensive payroll records produced by Weight Watchers (*ibid.*).

///

///

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER
CERTIFYING SETTLEMENT CLASS AND PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT
CASE NO. CV 14-01983 TEH

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

3. **The proposed settlement is the product of non-collusive, arms-length negotiations.**

Prior to entering into any settlement discussions, Class Counsel carefully evaluated the claims at issue in the Complaint, including researching any legal developments since the class action settlement in *Sabatino*.  The Parties negotiated aggressively and at arm's length over the amount of money Weight Watchers would pay to settle all claims in the Complaint.  During the course of negotiations, Weight Watchers provided Class Counsel with payroll data and other information regarding the putative class members and the pay periods at issue.  Class Counsel consulted with a forensic accountant, who analyzed the data provided by Defendant to establish the number of workweeks at issue and identify the projected recovery for the Class.  Following extensive negotiations, the parties reached an agreement in principle.  The Parties continued to engage in additional arm's length negotiations to reach agreement on the full terms and conditions of the proposed settlement now set forth in the Joint Stipulation (*id.* at ¶ 42).

4. **The proposed settlement has no obvious deficiency and does not improperly grant preferential treatment to the class representatives or segments of the class.**

The Settlement has no obvious deficiency.  It does not grant preferential treatment to the Representative Plaintiffs, who will share in the Net Settlement Fund on the same terms as all other Class Members.  (The Representative Plaintiffs' applications for service payments, discussed below, are proper under the law, and it is not a condition of settlement that the applications be granted.)  Nor does the Settlement improperly grant preferential treatment to segments of the Class.  The Settlement does include a Plan of Distribution ("Plan") for distributing the Net Settlement Fund, under which some Class Members are relatively advantaged or disadvantaged, depending on their particular work histories.  But as discussed below, the Plan constitutes a fair, reasonable and proper attempt to more highly reward the particularly valuable claims in the case (specifically, claims of Leaders and those potentially giving rise to penalties under Labor Code Section 226 for wage statement violations).  The proposed settlement falls within the range appropriate for approval.

///

///

a.       **Amount of settlement payment.**

The Settlement provides for a substantial economic recovery by the Class.  Weight Watchers will make a non-reversionary Settlement Fund payment of $1,687,500.  The average gross (i.e., pre-tax) payment to Class Members based on the presently-projected amount of the Net Settlement Fund is approximately $365 (*id.* at ¶ 51).  The recovery per Class Member varies by individual based on the Plan of Distribution described above, which takes into account the individual's work history in relation to the amount of time worked during the class period, including any pay periods subject to enhanced PAGA penalties.  Pursuant to the Plan, it is estimated that an individual working as a Leader throughout the class period would recover  a gross amount (before taxes are taken out) of approximately $1,445.80.  An individual working only in a non-Leader position throughout the class period would recover up to approximately $279.90, according to calculations by Plaintiffs' consultant.  Class Members are not required to submit claims or take any other affirmative action to receive their shares of the settlement, which should result in a much higher percentage of the Class receiving money under the Settlement than would be the case if some affirmative action were required (*id.* at ¶ 53).

These are significant amounts in absolute terms, and they are also significant amounts when viewed in the context of this case.  Class Members are relatively low-paid, primarily part-time workers, and, arguably, a very significant claim in the litigation in terms of a combination of the strength of the liability theory, likelihood of success, and possible recovery (as evaluated by Class Counsel) is the claim for "penalties" for failure to provide wage statements as required by Labor Code Section 226(a).  As discussed below, the Class's claims for unpaid minimum wages – which would have a large conceivable recovery under Plaintiffs' theory – face a very significant liability risk, and the claims for PAGA penalties – which in theory could be very high – are subject to not only the liability risks to their underlying Labor Code claims, and a risk of being overstated due to certain calculation methodology assumptions that have been used, but also to the Court's statutory discretion to reduce any award of penalties to avoid an award that is unjust, arbitrary, or oppressive.

///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER
CERTIFYING SETTLEMENT CLASS AND PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT
CASE NO. CV 14-01983 TEH

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

As more fully discussed in the supporting Declaration of Steven G. Zieff, the amount of the Settlement Fund is fair and reasonable, taking into account the nature, strength, and potential value of the Class's claims and the risks the Class faces from continued litigation (*id*. at ¶¶ 51-63).[4]  While Plaintiffs are confident that all of the Class's claims and prayers for relief are meritorious, Plaintiffs are also cognizant that the Class faces risks and uncertainty in moving forward with the litigation, including but not limited to the following:  the risk that Plaintiffs will not obtain class certification for all of the putative class action claims; risks to Plaintiffs' several theories of liability for unpaid wages, including a particularly significant risk to Plaintiffs' core liability theory that Leaders have not been paid at least the minimum wage for several hours of work per week; a risk to Plaintiffs' theory of liability for unpaid expense reimbursements; the risk that Plaintiffs will not be able to prove that Weight Watchers' violations of California's itemized wage statement law were "knowing and intentional"; the risk that Plaintiffs will not be able to prove that Weight Watchers' failure to pay due but unpaid wages to separating employees was "willful"; the risk that the fact finder will not fully credit Class Members' testimony regarding how many hours they worked or otherwise decide not to award the Class the full measure of damages for unpaid wages sought by the Class; the risk that the Court will not award the Class all or any of the liquidated damages it seeks based on a finding that Weight Watchers has acted reasonably and in good faith in concluding that it has been complying with California's minimum wage rules; the risk that the Court will exercise its discretion under the PAGA not to award the full measure of penalties provided for in the statute; the risk that the Court will rely on equitable considerations not to award the Class the full measure of Section 17200 restitution sought; and the risk that it will take years of litigation before the Class ever recovers any compensation, assuming the Class prevails on at least some of its claims.

///

///

---

[4]  The Zieff Declaration in the *Sabatino* case, which is discussed in and attached to, the Zieff declaration filed herewith, describes a realistic evaluation of Weight Watchers' potential maximum exposure in that case as well as the various litigation risks that would have been faced in continuing to litigate that case.

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER CERTIFYING SETTLEMENT CLASS AND PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT
CASE NO. CV 14-01983 TEH

The recovery amounts *per payroll* period for Class Members under the terms of the Proposed Settlement in this case is estimated to be substantially similar to that recovered by class members in the *Sabatino* case.  The net amount recovered per Class Member is less than in *Sabatino* because the class period in the instant litigation spans less than two years, whereas the period in *Sabatino* covered almost five-and-a-half years; but the recovery rates per payroll period in this settlement projects to be very close to (and for Leaders somewhat better than) the recovery rates per payroll period in the *Sabatino* settlement.  As set forth in the Zieff Declaration, the estimated approximate recovery rates per pay period for receptionists and non-Leader pay periods are very comparable to those approved in the *Sabatino* litigation.  In the case of Leader and enhanced (penalty) Leader pay periods, the recovery rate per pay period projects to be somewhat higher in this case than in *Sabatino* (*id.* at ¶ 51).

In view of the foregoing, including the risks and uncertainties in the Litigation, such as the risk that class certification might be denied, the risk of losing some or all claims on the merits, the risk of otherwise not recovering all the monetary relief sought, and the certain delay in any recovery by not settling, Class Counsel believes, and Plaintiffs otherwise submit, that the $1,687,500 Settlement Fund payment provided for by the Settlement is a fair, reasonable, and adequate amount for Weight Watchers to pay in settlement of all claims in the Litigation (*id.* at ¶ 63).

### b. Plan of Distribution.

As summarized above, the Settlement sets forth a Plan of Distribution ("Plan") for distributing the Net Settlement Fund among Non-Opt Out Class Members.[5]  The Plan is intended to more highly reward those claims that have significantly higher potential value in Class Counsel's judgment, based on Class Counsel's review and analysis of the relative strengths, risks, and potential recoveries associated with the various claims in the Litigation (*id. at ¶* 62).

---

[5]  Approval of an allocation such as the Plan of Distribution here is reviewed for fairness, reasonableness, and adequacy.  *In re Omnivision Tech., Inc.*, 559 F.Supp.2d 1036, 1045 (N.D. Cal. 2008).  "It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits."  *Ibid.*

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER CERTIFYING SETTLEMENT CLASS AND PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT CASE NO. CV 14-01983 TEH

RUDY EXELROD ZIEFF & LOWE LLP

351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

As in the *Sabatino* settlement, the Plan allocates 75% of the Net Settlement Fund (the "Leader Fund") to pay periods in which participating Class Members worked as meeting Leaders and the remaining 25% of the Net Settlement Fund (the "Non-Leader Fund") to pay periods in which participating Class Members worked as Receptionists and/or as employees performing hourly-paid Location Coordinator Work. This aspect of the Plan partly reflects (1) Class Counsel's considered view that the strongest claims in the case, and the claims promising the largest possible recovery for the Class, are claims for Labor Code Section 226(e) "penalties"[6] for violations of the itemized pay statement requirements set forth in Section 226(a) arising in pay periods when Class Members actually worked at one or more meetings as Leaders or Receptionists, and (2) the fact that such claims attributable to work as Leaders are estimated to give rise to a majority of the reasonably estimated total amount of Section 226(e) penalties the Class might possibly recover (*see id*. at ¶ 65). This aspect of the Plan also reflects Class Counsel's views and estimates regarding the relatively greater strength and larger potential value of Leaders' claims for unpaid wages and mileage reimbursements and the related claims for penalties (*ibid*.). In view of these factors, and the risks and uncertainties in the case more generally, Class Counsel believes that the 75%/25% allocation between Leader and non-Leader work is a fair and reasonable approximation of the relative worth of the claims arising from these two categories of Covered Employment under the Settlement (*ibid*.).

As in the *Sabatino* settlement, within the Leader Fund and Non-Leader Fund allocations provided for by the Plan, the Plan further provides for participating Class Members to recover at a higher rate for pay periods in which they have claims for a Section 226(e) recovery, reflecting, again, Class Counsel's judgment about the strength of those claims and the Class's associated possible recovery. In distributing the Leader Fund, the Plan provides for Class Members to recover at 2 times the rate for Section 226(e) claim periods as for non-Section 226(e) claim periods, recognizing – or at least reasonably presuming – that the applicable statute of limitations

---

[6] Plaintiffs introduce this term – which appears in the statute – in quotes here because Plaintiffs believe they may have an argument that the recovery at issue is actually a recovery of liquidated damages, such that a three-year statute of limitations would apply.

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

1  would be determined to be one year (*id*. at ¶ 66).

2      In distributing the Non-Leader fund, the Plan provides for Class Members to recover at 2-

3  1/2 times the rate for Section 226(e) claim periods in which Class Members actually worked at

4  one or more meetings as a Receptionist as for non-Section 226(e) claim periods and Section

5  226(e) claims periods in which the Class Member only performed Location Coordinator work,

6  and did not actually work at any meetings (*id*. at ¶ 67).

7      These aspects of the Plan – the methods for distributing the Leader and Non-Leader funds

8  – reflect what are necessarily approximations of the relative worth of the different claims at issue,

9  recognizing that some substantial enhancement must be given to recoveries for periods when

10  Class Members have Section 226(e) claims.  In the case of the Non-Leader Fund, the greater

11  enhancement reflects Class Counsel's beliefs about the even lesser relative worth of

12  Receptionists' and Location Coordinators' claims for unpaid wages *and* counsel's view that Class

13  Members have relatively weaker claims for Section 226(e) penalties in pay periods when they

14  only performed work as hourly-paid Location Coordinators (*id*. at ¶ 68).

15      As regards what is otherwise a straight pro rata method for distributing the Net Settlement

16  Fund on the basis of the number of Qualifying Payroll Periods each Class Member worked, in

17  light of the various types of claims and potential recoveries and associated risks at issue, and the

18  great multiplicity of different Class Member work histories, the Plan cannot be said to

19  significantly prejudice or favor any segment(s) of the Class relative to any other segment(s) of

20  the Class (*see id*. at ¶ 69).

21      For the foregoing reasons, the Plan of Distribution is fair and reasonable, and otherwise

22  within the range of reasonableness, so as to support the granting of an order preliminarily

23  approving the proposed settlement.

24      ### c.   Claims being released.

25      As in the *Sabatino* settlement, the release being granted under the Settlement by Class

26  Members who do not opt out is limited to the claims pleaded in the action and any additional

27  claims that could have been included based on the facts alleged by Plaintiffs in the Complaint

28  filed herein, and is further limited to claims that arose during periods of Covered Employment

20

RUDY EXELROD ZIEFF & LOWE LLP

351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

(*id*. at ¶ 50).  This is a fair and reasonable release under the circumstances of the case as described.

   **E.   The class representative service payments requested for the Representative Plaintiffs are fair and reasonable.**

   By this Motion, the Representative Plaintiffs are applying for awards of service payments of $12,500 for Plaintiff Connolly and $10,000 for Plaintiff Arneson (for a total of $22,500) from the Settlement Fund for their services on behalf of the Class and seeking preliminary approval of the requested awards for the purpose of giving notice to the Class.  Courts routinely approve such awards, as this Court did in the prior *Sabatino* case.  *Sabatino*, No. 09-cv-04926, Dkt. No. 43; *see, e.g.*, *Ingram v. The Coca-Cola Co.,* 200 F.R.D. 685, 694 (N.D. Ga. 2001).  In fact, the service awards sought here are somewhat less than was paid in the *Sabatino* case.  While the terms of the Settlement provided that the Representative Plaintiffs could apply to the Court for awards of up to $15,000 each, Plaintiffs and their counsel have exercised their judgment in deciding to seek $12,500 for Plaintiff Connolly and $10,000 for Plaintiff Arneson in service payments.  Furthermore, as a condition of receiving these service payments, the Representative Plaintiffs will be required to execute general releases that are broader than the releases applicable to other Class Members and impose additional obligations on the Representative Plaintiffs (Zieff Decl., ¶ 46 and Exh. 1, § 3.3 and Exh. C).

   Prior to the Fairness Hearing, Plaintiffs will file a more extensive submission in support of their application, including declarations from the Representative Plaintiffs describing their services on behalf of the Class and their time spent on the case.  At this stage, the Court should preliminarily approve the requested awards based on the fact that the Representative Plaintiffs – one of whom is still employed by Weight Watchers – spent a significant amount of time and effort on the litigation, including, but not limited to, providing Class Counsel with information to help them prepare the case,  responding to Class Counsel's requests for additional information, and being interviewed by Class Counsel regarding the claims at issue in this case (*id*. at ¶ 72).  Further, the amounts requested here are within the range of what courts have approved in numerous comparable cases, in Class Counsel's experience (*ibid*.).

///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER
CERTIFYING SETTLEMENT CLASS AND PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT
CASE NO. CV 14-01983 TEH

For these reasons, the Court should make a preliminary determination that the requested awards are fair, reasonable, and proper, and preliminarily approve the awards on that basis.

### F.     The Court should set a fairness hearing.

Because the case meets the requirements for certification of a settlement class and the Settlement meets the requirements for preliminary approval, the Court should set a final fairness hearing to decide whether to grant final approval to the Settlement, as well as whether to grant the Representative Plaintiffs' application for an award of service payments and Class Counsel's motion for attorney's fees. *See In re Wireless Facilities*, *supra*, 253 F.R.D. at 634; Fed. R. Civ. P. 23(e)(2). As reflected in the proposed order submitted herewith, Plaintiffs further request that the Court order that the Motion for Judgment and Final Approval is to be filed with the Court no later than 20 calendar days after the end of the Opt-Out Period, as defined in the Settlement.

Plaintiffs request that the Court set the Fairness Hearing for December 15, 2014, or the earliest available date thereafter.

### G.     The Court should direct notice to the Class of the proposed settlement and the final fairness hearing.

In the case of a class action settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement]." Fed. R. Civ. P. 23(e)(1). For a Rule 23(b)(3) class,

> the court must direct the best notice that is practicable under the circumstances, including individual notice to all members of the class who can be identified through reasonable efforts. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, L.L.C. v. General Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotes omitted).

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

The form of written notice provided for by the Settlement – *see* Joint Stipulation Exh. A (the "Notice") – meets all the foregoing requirements regarding the content of a notice to Rule 23(b)(3) class members.  The Notice explains in plain and easily understood language what the case is about, how much Weight Watchers is paying to settle, the requested amounts to be paid to Class Counsel from the Settlement Fund for attorney's fees and costs and service awards for the Representative Plaintiffs, the projected size of the Net Settlement Fund to be distributed to Class Members, how the Net Settlement Fund will be distributed, how to opt out, and how to object and appear at the Fairness Hearing.

The Parties' proposed plan for directing notice to the Class set forth in the Settlement also is "the best notice that is practicable under the circumstances." *Ibid*.  Using last-known addresses provided by Weight Watchers, additional addresses located through a search of the National Change of Address Database, and any alternative addresses provided by Class Counsel, the third-party Settlement Administrator will send the Notice by First Class United States Mail to all Class Members (Joint Stipulation, § 2.3(B)).  Further, the Settlement Administrator shall take all reasonable steps to obtain the correct address of any Class Members for whom the Notice is returned by the post office as undeliverable and shall attempt remailings in those situations (up to 40 calendar days after the initial mailing) (*ibid*.).  Plaintiffs are not aware of any additional method of distribution that would be reasonably likely to result in the receipt of notice by Class Members who may otherwise not receive notice pursuant to the proposed distribution plan.  For these reasons, the Settlement's plan for directing notice to class members satisfies the Rule 23(c)(2)(B) requirement for directing the best notice practicable under the circumstances. *See, e.g.*, *Wright v. Linkus Enter., Inc.*, 259 F.R.D. 468, 475 (E.D. Cal. 2009); *Misra v. Decision One Mortgage Co.*, 2009 WL 4581276, *9 (C.D. Cal. Apr. 13, 2009).

For the foregoing reasons, the Court should enter an order substantially in the form of the proposed order submitted herewith approving the Parties' plan for directing notice to Class Members, ordering the implementation of the plan on the terms set forth in the Settlement, and setting forth the dates or deadlines for opting out and objecting and for the Parties and the Settlement Administrator to perform the required acts related to the notice process, as provided in

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

the Settlement.

**V.      <u>CONCLUSION</u>**

     For the foregoing reasons, Plaintiffs respectfully submit that the Court should grant their Motion in its entirety and sign and enter the proposed order that has been agreed to by the Parties and submitted to the Court, including information to be added by the Court regarding the date and time for the Fairness Hearing.

DATED:  June 11, 2014               Respectfully submitted,

                                  RUDY, EXELROD, ZIEFF & LOWE, LLP

                                  By:    */s/ Steven G. Zieff*
                                        STEVEN G. ZIEFF
                                        Attorney for Plaintiffs

RUDY EXELROD ZIEFF & LOWE LLP
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CALIFORNIA 94104
PH (415) 434-9800 | FX (415) 434-0513 | www.rezlaw.com

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER
CERTIFYING SETTLEMENT CLASS AND PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT
CASE NO. CV 14-01983 TEH